## Commonwealth v. Martin

*Earl R. Doll*, Assistant District Attorney, and *John F. Rauhauser, Jr.,* District Attorney, for Commonwealth.

*Dell-Alba, Gailey & Bupp,* for defendant.

SHADLE, J., September 30, 1969.—Defendant was indicted for violating section 524, as amended, of The Penal Code of June 24, 1939, P. L. 872, 18 PS §4524, relating to the exhibition of obscene material. He has filed a pretrial application under Pa. R. Crim. P. 304 in the nature of a motion to quash the indictment. The sole ground pursued is that the acts alleged to have been done by defendant do not constitute a violation of the statute. The case was submitted to the court en banc, and this opinion and order are filed on its behalf.

Although the indictment itself is not explicit, both sides agree that a fair statement of the facts as taken from both the complaint and indictment is as follows:

". . . the said Defendant . . . being in the Peoples Drug Store in Continental Square in the City of York, Pennsylvania . . . (did unlawfully show and exhibit to persons seventeen (17) years of age or older printed matter of an obscene nature . . . in a public place, consisting of) having printed on the left sleeve of a light tan jacket (which he was wearing) 'Fuck Copper' and on the left side of rear jacket 'Fuck'."

We are thus compelled, however reluctantly, to enter into the legal never-never land of determining whether particular material is obscene. Defendant argues that the words were not displayed in a manner

violative of the statute, but as an epithet expressing his view of police officers, and that his commentary on a branch of the government is, therefore, protected by the freedom of speech provisions of the Federal and State constitutions.

The pertinent provisions of the latest amendment of section 524 of The Penal Code are as follows:

"(a) Whoever . . . exhibits . . . or shows to any person seventeen (17) years of age or older . . . any obscene . . . writing . . . or any written or printed matter of an obscene nature . . . is guilty of a misdemeanor . . . 'Obscene,' as used in this section, means that which, to the average person applying contemporary community standards, has as its dominant theme, taken as a whole, an appeal to prurient interest."

Although even the Supreme Court of the United States, as well as nearly every other court passing upon the question, ultimately have admitted inability to precisely define obscenity, we here are compelled to determine whether the writing displayed by defendant is obscene. One unusual feature of the present case is that we are not dealing with a picture, book or writing of words at length. The offense assigned consists of exhibiting a single four-letter Anglo-Saxon word which describes the act of sexual intercourse. With the exception of one other lower court case hereinafter referred to, we have not encountered any other decision dealing with such a one-word situation.

We start with the proposition that, while the question of whether the acts of defendant constituted the exhibition of obscene material, and thus a violation of the statute, is a factual one ultimately to be decided by a jury, the court cannot avoid making an independent constitutional judgment on the facts of the case as to whether the material involved is constitutionally protected: Jacobellis v. Ohio, 378 U.S.

184 (1964) (per opinion of two Justices); Commonwealth v. Dell Publications, Inc., 427 Pa. 189 (1967).

Defendant's contention, that his language is constitutionally protected as free speech concerning government, may be quickly disposed of. If it is, in fact, obscene, it warrants no such protection.

". . . obscenity is not within the area of the constitutional protection of freedom of speech and press . . .": Roth v. United States, 354 U.S. 476 (1957); Anno., 11 L. Ed. (2d) 1116, 1129.

It may be of significance to attempt to fathom the manner in which defendant intended and appeared to use the four-letter word. When appearing in conjunction with the word "Copper," a hippie-type slang term for police officer, the writing is capable of being understood as an epithet or vulgar defiance of police, the four-letter word frequently being employed in this manner in some circles.

Commonwealth v. Wilsey, 16 Bucks 455 (1966), dealt with the oral use of this word by a defendant in a telephone conversation with a woman. That case was a prosecution under another section of The Penal Code proscribing the use of lewd, lascivious or indecent words by telephone. The court there held that because defendant used the word as an epithet rather than as an invitation to engage in lascivious activity, he was not guilty of violating the section in question. While the court added the conclusion that use of the word as an epithet rather than as an invitation prevented it from being obscene, it is questionable whether that conclusion was essential to the decision. In any event, we are of opinion that that case does not clearly dictate the disposition of the writing here involved. This is particularly true in the light of the indication in Roth, supra, that merely inciting obscene thoughts, without any inducement to act, is sufficient to render material obscene.

Section 524, supra, obviously contains its own definition of obscenity, which must, therefore, be followed. However, this definition must be read as incorporating the United States Supreme Court's most recent qualifying language in order to save the constitutionality of the act: Commonwealth v. Baer, 209 Pa. Superior Ct. 349 (1967).

The most recent interpretation of Roth appears in the opinion of three Justices in Memoirs v. Massachusetts, 383 U.S. 413 (1966). It was there stated that under the Roth rule, three elements must coalesce. It must be established that (1) the dominant theme in the material taken as a whole appeals to a prurient interest in sex; (2) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (3) the material is utterly without redeeming social value.

One of the elusive factors is the meaning of the word "prurient." A footnote in the Roth opinion approved such definitions as having a tendency to excite lustful thoughts; itching; longing; uneasy with desire or longing; itching, morbid or lascivious longings; desire, curiosity, propensity; lewd; a shameful or morbid interest in nudity, sex or excretion, if the material goes beyond customary limits of candor in description or representation of such matters.

We have no difficulty in concluding that the four-letter word displayed by defendant is capable of being found by a jury to be patently offensive in affronting contemporary community standards relating to the description or representation of sexual matters. What can be more sexually related than the word which is a synonym of the very act of sexual intercourse? Whatever may be the practice of vulgar-speaking persons in private or small groups of persons of one sex, or whatever may be the permissive attitude of some

as to frankness of expression, we are of opinion that the open public display of the word by defendant in the manner described can be found by a jury to affront contemporary standards of this community.

We are even more clear that no one could seriously disagree that the display conducted by defendant is utterly without redeeming social value.

Whether the dominant theme of the material appeals to a prurient interest in sex gives us some pause, because only the single word was used. That at one place it was coupled with the word "Copper" seems to us of little importance, since the problem is not whether the phrase was intended to constitute an invitation or exhortation to a sexual act with a police officer. The difficulty is whether the use of a single word meaning sexual intercourse excites or arouses lustful, lewd or lascivious longings, thoughts or desires. That a picture, drawing or provocative sentence or series of words may do so is beyond question.

We must conclude that the opinion filed on behalf of the Supreme Court meant what it said, despite the fact that nearly all the members of the court doubt that this is so. Consequently, we hold that the public and indiscriminate display of the word in question, being the very name of the ultimate sexual act, is capable of being found by a jury to create ". . . a shameful or morbid interest in . . . sex . . . (and that) it goes beyond customary limits of candor in description or representation of such matters . . ." This being so, the exhibited word can be found, under the Roth rule, to have a dominant theme appealing to a prurient interest in sex.

We are not deterred, as the Supreme Court was not, by the many questions our conclusions leave unanswered. We need not now decide whether puerile individuals who scribble graffiti on washroom walls

or wooden fences are exhibiting obscenity. Neither must we now resolve whether childish and idiotic persons who might inscribe upon their clothes or bodies other words or symbols relating to nudity, sex or excretion are guilty of the same offense. We hold merely that the display exhibited by defendant in the manner prescribed in this case is not constitutionally protected.

However, this by no means determines defendant's guilt or innocence of the offense charged. That is a matter which must be decided in a trial by a jury which will itself determine guilt or innocence on the issue of whether the three elements of obscenity originated in Roth and explicated in Memoirs have been met.

## ORDER

And now, to wit, September 30, 1969, defendant's pretrial application to quash the indictment is overruled and refused, and an exception is noted on his behalf.