[Civ. No. 3617.   First Appellate District, Division One.—January 22, 1921.]

## JAMES S. THOMSON, Respondent, v. JOHN M. LANGTON et al., Appellants.

[1] PARTNERSHIP — FIXED DURATION — MISCONDUCT OF COPARTNERS — CONDUCT OF BUSINESS AT LOSS — DISSOLUTION — EVIDENCE.—Notwithstanding the duration of a partnership is fixed by agreement at a definite time, a partner has the right under the law to have it dissolved sooner because of the serious misconduct of his copartners or because the business can only be further conducted at a loss; and in this suit for dissolution of a partnership the evidence not only abundantly showed that one of the defendants was guilty of serious misconduct, entitling the plaintiff to a dissolution of the partnership, but it appeared from the evidence that the partnership had suffered a serious loss by fire and that the business of the concern could be conducted only at a permanent loss unless sufficient money could be borrowed by the firm or obtained by means of a further contribution to its capital by the copartners.

[2] ID.—IMPAIRMENT OF CAPITAL — CONTRIBUTION OF ADDITIONAL CAPITAL.—Where there has been a substantial impairment of the original capital a partner is not required to furnish money or to engage his personal credit in order to rehabilitate or restore the partnership business.

APPEAL from a judgment of the Superior Court of Los Angeles County. Willis I. Morrison, Judge. Affirmed.

The facts are stated in the opinion of the court.

---

1. Grounds for dissolution of partnership, notes, 69 Am. St. Rep. 410; 4 Ann. Cas. 460.

E. B. Coil for Appellants.

Samuel H. French for Respondent.

KERRIGAN, J.—This is a suit for dissolution of a copartnership. Judgment went for plaintiff, and certain of the defendants appeal.

The only questions presented for determination are whether or not the evidence warrants a judgment of dissolution, and whether or not certain moneys paid upon a policy of insurance on copartnership property belong to plaintiff individually or to the copartnership.

Eleanor Jane Langton and John M. Langton, Jr., are mother and son, and they are the sister and nephew, respectively, of Matilda Thomson, the wife of the plaintiff. Langton Jr. and his father had been conducting a sash and door business for some time in Los Angeles, but prior to the formation of the copartnership sought by this suit to be dissolved, Langton Sr. had transferred his interest to his wife and son. Langton Jr. and his mother, being in need of more capital in the business, the former approached his aunt, Mrs. Matilda Thomson, in January, 1916, with a request that she advance the necessary funds. Instead of consenting to make a loan, she agreed to take a one-third interest in the said business in the name of her husband and to pay the Langtons therefor the sum of $3,000. Thereupon articles of copartnership were entered into by Langton Jr., Mrs. Langton, and James S. Thomson, wherein it was agreed in part that they should each hold an undivided one-third interest in and to the property of the Langton Door and Sash Company. Langton Jr. and Langton Sr. were each to receive a salary of $100 per month, and Thomson was to receive a salary of fifty dollars per month, which was to be increased at the expiration of six months to such sum, not to exceed $100, as could be paid out of the business. As a consideration for such salaries the partners agreed to give their entire time and attention to said business. The enterprise was to continue for two years from and after January 19, 1916.

[1] Plaintiff's contention in support of the judgment of dissolution is that, notwithstanding that the duration of the partnership was fixed by agreement at a definite time, he

had the right under the law (Civ. Code, secs. 2451, 2452) to dissolve it sooner without being liable in damages because of the serious misconduct of his copartners and because the business could only be further conducted at a loss.

As a result of a trial, at which much evidence was presented, the court found that Langton Jr. claimed that the firm was indebted to Langton Sr. for services in the sum of $654, when he well knew that this amount was at least $200 in excess of the sum actually due; that said Langton Jr. at divers and sundry times refused to admit plaintiff to the office of said firm and locked him out therefrom, and refused to allow him to examine the books and accounts of said firm, and also at numerous times refused to consult with him in the affairs or management of said business; that Langton Jr., in the manner aforesaid and in other ways, exercised such arbitrary and despotic control over the affairs of the copartnership that it became impossible for any relation of trust and confidence between him and the plaintiff to exist. The court further found that on or about the thirtieth day of January, 1917, said Langton Jr. pretended to sell to said copartnership a certain lot of doors, 1,408 in number; that said pretended sale and purchase was without the knowledge or consent of plaintiff; that said defendant Langton Jr. represented that he purchased said doors and turned the same in to said partnership at and for the cost price to him, to wit, $1,600, but the court finds that all of said transaction was carried out with the funds of said firm, and that the cost price of said doors to said Langton was several hundred dollars less than $1,600, and that in said transaction said Langton Jr. made a secret profit for himself of several hundred dollars, and concealed the fact from said plaintiff, and plaintiff did not know until after said pretended sale of said secret profit so made by said Langton, nor that said defendant was not the sole owner of said doors. The court also found that a certain loss by fire which took place February 4, 1917, was in excess of one-half of the total assets of the business of the copartnership; that there was available for the resumption of business less than $5,000 in assets, and that a resumption of the business would require a substantial contribution by the partners. On this subject it further found: "That said copartnership could not incur indebtedness for said amount without impairing its credit

and standing; that said outlay would involve an expenditure not contemplated in the articles of copartnership, and could not be provided for out of the present assets, and would involve the assumption by the parties of a liability in addition to the amount contributed or agreed to be contributed to the capital of said firm. . . . That on account of said loss by fire and the necessity aforesaid for the expenditure of money in procuring machinery and replacing the mill building and merchandise, and the necessary expenses of the business, it will not be possible to carry on the business of the partnership further except at a permanent loss; that said business cannot be rehabilitated and restored to a prosperous and active business under said copartnership agreement.''

Coming now to the proposition of the insurance, the court found substantially as alleged by plaintiff, as follows: That defendants had failed and refused, notwithstanding the requests of plaintiff, to procure insurance against loss by fire on said property of said firm or any part thereof, and there was no insurance on said property so destroyed by said fire except the sum of $2,000, which had been paid for and carried by plaintiff under an agreement with said Langton Jr. and said Eleanor Jane Langton that in case of loss no part of the moneys on account thereof should be claimed by either of the defendants or regarded as partnership property, but that the same should stand as indemnity and reimbursement for any loss on plaintiff's share in the partnership property; that plaintiff should pay for said insurance and carry the same for and on his own account.

The evidence supports the findings. One of the causes of difference between the partners was the conduct of Langton Sr., who, principally on account of his convivial excesses, was often absent from business, and when present his conduct was offensive and his work unsatisfactory, occasionally amounting to drunken violence. The conduct of Langton Jr. was even more flagrantly in violation of his duties to the plaintiff as a partner. The evidence shows that he declined to treat the plaintiff as a partner in the conduct of the business, refused to disclose to him or to give access to information as to prices necessary for the proper conduct of the enterprise, resulting in loss of customers; that he locked the door of their place of business and refused plaintiff access thereto, and, finally, as found by the court, that

51 Cal. App.—10

he used the funds of the firm to make a secret personal profit.

With respect to the trial court's finding that as a result of the fire, which destroyed a large proportion of the plant and property of the copartnership, the business could not be rehabilitated and restored to a prosperous and active business under the copartnership agreement, it appears that as a result of said conflagration the assets of the firm were reduced from $16,144 to $4,294; that Langton Jr. was unable to pay his debts and was without credit; and it was stipulated that the only way in which the firm could have obtained money to resume business, if at all, was by borrowing it.

As to the question of the ownership of the money derived from the payment of the policy of fire insurance already referred to, the plaintiff testified that, following a conversation between his wife and Mrs. Langton, the latter said that neither she, her husband, nor her son cared to carry any insurance on the business; that they would not do so, but that if Mrs. Thomson cared to have insurance, to have it, and that Langton Jr. and she, if the policy were taken in the name of the partnership, would assign their interest therein to plaintiff in the event of the occurrence of a loss. This witness also said that he was present at a conversation between an agent of an insurance company soliciting insurance from the firm, at which time Langton Jr. told the agent positively that "he would not take out insurance." Other testimony in the record is to the effect that a policy of insurance was to be taken out to the credit of the firm; that the premium thereon was to be paid by the firm and charged to plaintiff's account, and in the event of loss by fire, said policy was to be regarded as having covered plaintiff's one-third interest in the firm.

The foregoing brief reference to the testimony abundantly shows that Langton Jr. was guilty of serious misconduct entitling the plaintiff to a dissolution of the partnership. In addition to this, it appears clear from the evidence that after the loss by fire the business of the concern could be conducted only at a permanent loss unless sufficient money could be borrowed by the firm or obtained by means of a further contribution to its capital by the copartners. [2] But it is a settled law that where there has been a substan-

tial impairment of the original capital a partner is not required to furnish money or to engage his personal credit in order to rehabilitate or restore the partnership business. In *Van Ness* v. *Fisher*, 5 Lans. (N. Y.) 235, 241, it is said: "The partnership was not formed on any other idea or understanding by either party than that of doing the business contemplated upon the capital stipulated to be furnished, to wit, $2,000, or as much more as the parties might voluntarily furnish. Nothing appears in the articles from which it could be inferred that a resort to the credit of the concern was contemplated as a means of carrying on its business. Upon the loss of the $2,000 neither party could call upon the other to furnish more; consequently upon the loss of the capital no more business could be done unless by mutual consent; for if either could use the credit of the firm to procure the means of going on with the business, he could compel his copartner to furnish more capital than he agreed to furnish."

In 1 Bates on Partnership, section 251, it is stated: "Where four persons agreed to (and did) buy oil lands for resale, each contributing in specified proportions to be repaid from sales, and the lands had greatly depreciated, and one filed a bill calling upon the others to make up the difference between the amounts contributed by him and them, those contributions are capital and not advances, and hence there was no right to compel contribution."

From the authorities it is apparent that a partner cannot be forced to make a contribution of additional capital, and it necessarily follows that he could not be compelled to join in raising money by borrowing it, for this would be nothing more in effect than an enforced contribution.

It follows from the foregoing that the plaintiff was entitled to the judgment which he recovered dissolving the partnership and awarding him the money collected upon the policy of insurance.

The judgment is affirmed.

Richards, J., and Seawell, P. J., *pro tem.*, concurred.