[Civ. No. 51038. Second Dist., Div. Four. May 30, 1978.]

SEYMOUR G. JACOBY et al., Plaintiffs and Appellants, v.
ROBERT FELDMAN, as Trustee, etc., Defendant and Respondent.

**COUNSEL**

Allan H. Liebert for Plaintiffs and Appellants.

Keltner & Schreiber and Edwin C. Schreiber for Defendant and Respondent.

**OPINION**

**JEFFERSON (Bernard), J.**—Plaintiffs Seymour G. Jacoby, Norman Beck and Morris Appleman filed a complaint for declaratory relief seeking interpretation of a certain amended partnership agreement executed by them and Sam Feldman, now deceased. Named as defendant was Robert Feldman, the decedent's son, who was the trustee of his

father's estate. Defendant filed a cross-complaint requesting dissolution of the partnership, an accounting, appointment of a receiver, rescission and declaratory relief also.

The case was tried by the court, sitting without a jury. Judgment was awarded to defendant and cross-complainant Robert Feldman. Plaintiffs have appealed from the judgment.

## I

### The Facts

We summarize the facts which are material to the resolution of the issues presented here. In 1954, pursuant to written agreement, plaintiffs and Sam Feldman formed the J.F.B.A. partnership. The purpose of the enterprise was the operation of the Del Capri Hotel, located at 10587 Wilshire Boulevard, in Los Angeles.

On November 8, 1955, the four partners formed a California corporation, the Del Capri Hotel Corporation, to operate the hotel. The four partners were the sole shareholders of the corporation, formed to insulate them from personal liability for claims arising from the hotel operation. It was also expected that incorporation would produce tax benefits for the partnership. From 1955 on, the Del Capri Hotel Corporation leased the Wilshire property from the J.F.B.A. partnership, and operated the hotel located there. The partnership has continued in existence as the owner of the real property.

In March 1967, the four partners executed an amended partnership agreement and, in June 1967, they executed an addendum to that agreement. Sam Feldman died on August 5, 1969.

Sam Feldman's son, Robert, served as executor of his father's estate and then as trustee pursuant to the provisions of the father's will. During the period from 1969 to 1974, when the present dispute arose, the J.F.B.A. partnership operated under the 1967 amended agreement. The estate of Sam Feldman, while it exercised no managerial voice in partnership affairs, received 25 percent of the profits and was identified as the fourth partner for accounting and tax purposes. Sam's widow, Gertrude, was a member of the board of directors of the Del Capri Hotel Corporation during this period.

The amended partnership agreement contained pertinent provisions relative to the death of a partner: Paragraph 10(D) provided: "In the event of the death of any PARTNER, the business of the PARTNERSHIP and such deceased PARTNER's share in profit and losses shall continue to the end of the fiscal year in which such death occurs. The estate of a deceased PARTNER shall share in the net profits or losses of the PARTNERSHIP for the balance of the fiscal year in the same way the deceased PARTNER would have shared in them had he survived to the end of the fiscal year; provided, however, that upon the death of any PARTNER, such deceased PARTNER's legal representative, heirs, devisees, or legatees, shall have no voice or right to participate in the affairs or business of the PARTNERSHIP, but the management and conduct of the PARTNERSHIP business shall be governed by vote of the majority of the surviving PARTNERS."

Paragraph 11 of the amended agreement states: "Each of the PARTNERS shall have an equal voice in the management and conduct of the PARTNERSHIP business. All decisions shall be made by majority vote and each PARTNER shall be entitled to one vote; provided, however, that in the event of the death of any PARTNER, such deceased PARTNER's legal representative of his estate, his heirs, devisees, or legatees, shall have no voice, vote or right to participate in the management or conduct of the business of the PARTNERSHIP, . . ."

Paragraph 12 provides, in pertinent part: "The death of any PARTNER during the term of the PARTNERSHIP shall not terminate the PARTNERSHIP business, but the personal representative of the deceased PARTNER or the person or persons to whom such PARTNERSHIP interest shall be distributed shall have the same rights and obligations in the PARTNERSHIP for the remainder of the PARTNERSHIP term as the deceased PARTNER would have had, had he survived, except as is provided in paragraph 11. Each PARTNER shall execute a Will directing his legal representative to continue the decedent's interest in the PARTNERSHIP business during the full term of this agreement and requiring such legal representative to do all things necessary to accomplish this purpose. [¶] The estate of a deceased PARTNER, its legal representatives, or such deceased PARTNER's distributees to whom his PARTNERSHIP interest herein is distributed, may sell, pledge or hypothecate such interest in the PARTNERSHIP, but only in strict compliance with the provisions of paragraph 13(A) of this agreement, providing for previously offering said interest to the other PARTNERS. Any purported sale or transfer of such deceased PARTNER's interest shall be null and void unless the terms, conditions and provisions of paragraph 13(A) are strictly observed and followed. . . . [¶] Upon

distribution of the estate of the deceased PARTNER, this PARTNERSHIP shall not terminate, but the distributee or distributees shall be the PARTNER or PARTNERS, as the case may be, in the place of the deceased PARTNER subject to the limitations of paragraph 11."

Subparagraph A of paragraph 13 sets forth the procedure by which a partner wishing to sell or borrow against his interest could accomplish his objective; the remaining partners would have an option to purchase that interest before the partner wishing to sell or borrow was free to deal with others.

The amended partnership agreement did not specify a fixed term for the duration of the partnership, contemplating that it would continue as long as its primary business continued, i.e., the ownership of the Wilshire real property. In paragraph 14 of the agreement, it was specified that "[t]his PARTNERSHIP may be dissolved by the vote of a majority of the PARTNERS, excluding any vote of the successors in interest of a deceased PARTNER."

Thus, it may be seen that the agreement was drafted to retain control of the enterprise, as long as possible, by the surviving original partners. The amended agreement was modified on June 2, 1967, by Addendum No. 1, which provided that when *two* or more of the original partners were deceased, heirs and distributees would succeed to partnership interests with voting rights.

In 1974, defendant Robert Feldman became a director of the Del Capri Hotel Corporation. Prior to 1970, he had served in the capacity of a certified public accountant for the J.F.B.A. partnership, but, since that time, had apparently not been involved in partnership matters. He and the plaintiffs, also corporation directors, disagreed about some items of corporate business, namely, the proposed execution by the corporation of a new lease of the hotel premises until 1984 (including options to renew) from the J.F.B.A. partnership. Robert Feldman also opposed provisions for management fees payable to the directors of the corporation.

Defendant announced his intention of seeking dissolution of the partnership at a November 1974, meeting. Plaintiffs responded with the action for declaratory relief to establish the validity of the partnership agreement which was drafted to discourage dissolution and to limit the alternatives available to a partner who wished to leave the enterprise. As

indicated, defendant, by cross-complaint, sought and obtained a decree of dissolution and ancillary relief as well.

The thrust of defendant's position at trial was that the partnership and the corporation were essentially one and the same, managed by the same individuals, the plaintiffs; defendant's estate, while accorded both the benefits and burdens of the partnership interest, had no managerial voice in the enterprise. Defendant contended that the enterprise was being conducted improperly due to questionable accounting procedures, thereby subjecting the Feldman estate to potential federal and state tax liability which the estate could do nothing to avoid.

At trial, a principal issue in dispute was the propriety of the accounting system employed by the two entities, who maintained separate books. The objective was to minimize taxation of J.F.B.A. partnership income, which was achieved in various ways, but, for the most part, by ad hoc adjustment of the rental income received by the partnership from the corporation for the hotel premises.

As a result of these adjustments over the years, the books showed that the corporation owed to the partnership approximately $90,000. The rental adjustment, as well as other more minor items, was often reflected in transactions where cash never changed hands at all; paper transactions were employed.

Plaintiffs' accountant, Noble, testified in defense of these questioned transactions that they were valid and legal examples of accounting practice, while defendant's accountant, Solomon, disagreed, based upon his survey of the partnership books, which were kept by accountant Noble in Las Vegas, Nevada. The trial court appointed an outside accountant, the S. D. Leidesdorf & Company, to report to the court its independent conclusions concerning the accounting procedures employed. The report of S. D. Leidesdorf & Company was attached to the findings of fact and conclusions of law as exhibit "A."

## II

### *The Findings of Fact and Conclusions of Law*

The trial court, interpreting the amended partnership agreement, rejected the contention that the partnership was a partnership at will, subject to dissolution by any partner to the agreement. It also concluded

that the fact that the estate of Sam Feldman had no managerial voice in partnership matters did not invalidate the partnership agreement. It made no findings as to whether the estate of Sam Feldman was a partner within the meaning of the agreement, but held that plaintiffs were fiduciaries in relation to the estate.

The court further held that the partnership should be dissolved pursuant to Corporations Code section 15032, subdivisions (1)(d) and (f).[1]

Specifically, the trial court found that plaintiffs "have conducted themselves in matters relating to the partnership business [in such a manner] that it is not reasonably practicable for the Partnership business to be carried on between the partners, and other circumstances render a dissolution of J.F.B.A. Partnership equitable, some of which matters and circumstances are reflected in Exhibit 'A' attached hereto and incorporated herein by reference." Further, "there has been a distortion of income and expenses of J.F.B.A. Partnership contrary to accounting principles and to the rules for reporting of income and expense to Federal and State taxing authorities, prejudicial to Cross-Complainant's interest in J.F.B.A. Partnership." The court found a unity of interest between the partnership and the corporation, and held that "it would sanction a fraud and promote injustice" to give validity to the 1974 lease between the corporation and the partnership.

The trial court made certain specific findings relative to the 1974 lease, holding that the consideration to be paid by the corporation was less than fair market value; that the consideration had been arbitrarily controlled from time to time without reference to fair market value; had resulted in a debt of approximately $90,000, owed by the corporation to the partnership. "When rent was paid to the Partnership it was with checks drawn against uncollected bank deposits, which represented loans by the Partnership, which in turn were drawn against uncollected deposits. These were sham transactions as sufficient funds were not on deposit to cover them." The independent report received by the court verified the existence of these sham transactions, identifying them as examples of questionable accounting practice.

---

[1]That section reads as follows: "(1) On application by or for a partner the court shall decree a dissolution whenever: . . . (d) A partner wilfully or persistently commits a breach of the partnership agreement, or otherwise so conducts himself in matters relating to the partnership business that it is not reasonably practicable to carry on the business in partnership with him, . . . (f) Other circumstances render a dissolution equitable."

Along with dissolution, the trial court ordered an accounting, annulled the 1974 lease between the entities, and appointed a receiver.

### III

### *Interpretation of the Amended Agreement*

■  Plaintiffs contend on this appeal that defendant Robert Feldman, as trustee of his father's estate, was not a "partner" within the meaning of the agreement and, since he was not, he was not a proper party to seek dissolution pursuant to Corporations Code section 15032 (see fn. 1). Plaintiffs point out that Corporations Code section 15006 defines a partnership as ". . . an association of two or more persons to carry on as co-owners a business for profit." It is argued by plaintiffs that since the partnership agreement specifically excluded all but the surviving partners from managing the partnership (when one partner had died), defendant was not carrying on the business, and thus was not a partner for purposes of seeking dissolution.

Plaintiffs also assert that, as the reviewing court, we are not bound by the trial court's interpretation of the amended partnership agreement.

It is true that "[i]t is . . . solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence. ■ Accordingly, 'An appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence [citations], where there is no conflict in the evidence [citations], or a determination has been made upon incompetent evidence [citation].' " (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) However, we find no error in the trial court's interpretation of the agreement, and hold that its ruling, as far as it went, was essentially correct. The partnership, engaged as it was in long-term leasing activities, was not a partnership at will (*Zeibak* v. *Nasser* (1938) 12 Cal.2d 1, 12 [82 P.2d 375]), nor did the limitation placed on managerial functions render the partnership agreement invalid (*Moulin* v. *Der Zakarian* (1961) 191 Cal.App.2d 184, 190 [12 Cal.Rptr. 572]).

■  We have concluded that the amended partnership agreement contemplated that, under certain well-defined circumstances, profits and liabilities of the partnership might be shared with a "nonvoting partner," a partner in every sense of the word except for voting rights. Paragraph 12

of the amended agreement emphasizes that the representative of a deceased partner has "the same rights and obligations" the deceased partner would have had, except for voting rights. In addition, the evidence is uncontroverted that the parties treated the Feldman estate as they would have treated Sam Feldman, in terms of accounting, sharing of profits, and tax reporting, during the period from his death to 1974.

Under the attendant circumstances, we have no difficulty in holding that the Feldman estate was a partner within the meaning of Corporations Code section 15032. While we have been unable to discover any pertinent decisional law on what constitutes a "partner" within the meaning of the section, we conclude that the section was intended to be broadly construed and in such a fashion as to produce reasonable results. In our view, it would be unreasonable to construe the amended partnership agreement as totally precluding a nonvoting member of the J.F.B.A. partnership from ever being able to resort to a court of equity to seek redress from improper partnership management.

■ As a nonvoting member of the partnership, defendant was owed a fiduciary duty by the voting partners, the plaintiffs (*Wind* v. *Herbert* (1960) 186 Cal.App.2d 276, 284 [8 Cal.Rptr. 817]), and, implicit in that duty was the obligation of the plaintiffs to conduct partnership affairs in such a manner as not to damage defendant's interest, including not subjecting defendant to possible liability for tax evasion.

## IV

### Sufficiency of the Evidence

■ Plaintiffs contend that there was insufficient evidence to support the finding decreeing dissolution of the partnership pursuant to Corporations Code section 15032, subdivisions (1)(d) and (f). ■ We reiterate that "in examining the sufficiency of the evidence to support a questioned finding, an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion. Every substantial conflict in the testimony is, under the rule which has always prevailed in this court, to be resolved in favor of the finding." (*Bancroft-Whitney Co.* v. *McHugh* (1913) 166 Cal. 140, 142 [134 P. 1157].)

■ Plaintiffs take the position that there was insufficient evidence to establish the type of wrongful acts which have, in the decisional law, supported a judgment of dissolution of a partnership. Corporations Code section 15031, subdivision (6), provides that a dissolution of a partnership is caused "[b]y decree of court under Section 15032." Section 15032 allows a court to dissolve a partnership whenever a partner—or partners—conduct the enterprise in a manner rendering it "not reasonably practicable to carry on the business in partnership . . ." (subds. (1)(c), (d)); in addition, the court may consider "other," nonenumerated, circumstances as well (subd. (1)(f)).

Section 15032 confers broad power upon a trial court to arrive at a fair resolution of conflict between partners under a variety of circumstances. Dissolution has been upheld where there was misappropriation of partnership funds (*Wind, supra,* 186 Cal.App.2d 276), the taking of secret profits (*Thomson* v. *Langton* (1921) 51 Cal.App. 142 [196 P. 103]), sale of partnership assets (*McAtee* v. *McAtee* (1930) 105 Cal.App. 555 [288 P. 114]) and fraud practiced by one partner upon another (*Cottle* v. *Leitch* (1868) 35 Cal. 434). Plaintiffs argue here that the J.F.B.A. partnership was operating at a profit without evidence of misappropriation.

Much of the case law in this area is of the antique variety. Corporations Code section 15032 is of more recent vintage, and recognizes that theft or misappropriation of funds by a faithless partner is not the only manner in which damage may be done to an innocent participant. Considering the intricacy of present tax reporting requirements, it would seem essential that a partner be assured that proper accounting techniques are being employed to report partnership income to the tax authorities. The problem in the instant case has been compounded by the fact that the defendant had no authority to effect change in accounting procedures pursuant to the amended agreement.

Plaintiffs assert that defendant's true motivation was simply to avoid compliance with the amended agreement, particularly the impact of paragraph 13(a), which provides for the sale of a partnership interest, subject to offering the interest first to the other partners. The fact that defendant had a possible alternative to seeking dissolution of the enterprise was one, but only one, factor which the trial court could consider in arriving at its judgment. We find that there was substantial evidence to support the findings concerning mismanagement in the case at bench.

## V

### Estoppel

■ Plaintiffs also urge the contention that defendant should be estopped from any claims with reference to the accounting procedures because the Feldman family acquiesced in the procedures employed until 1974.

The trial court specifically found that Gertrude Feldman's participation as a member of the board of directors of the Del Capri Hotel Corporation was limited due to her business experience, which was not of great substance. It found that defendant had done accounting work for the partnership prior to 1970, but not thereafter. The trial court specifically rejected the allegation that actions of the Feldman family formed the basis for an estoppel, and we have discovered no evidence that disputes these findings.

Since we hold that the trial court properly ordered dissolution, we need not consider plaintiffs' claim that they are entitled to damages for defendant's wrongful dissolution of the partnership.

## VI

### Partition as Opposed to Sale

■ Plaintiffs contend that the trial court erred when it ordered a sale of the partnership assets; it is urged that a more desirable course would have been to order division in kind. Plaintiffs point out that the Wilshire property is unique and prime property due to its location. Plaintiffs rely on *Logoluso* v. *Logoluso* (1965) 233 Cal.App.2d 523 [43 Cal.Rptr. 678], for the premise that partition in kind of partnership property is regarded more favorably than outright sale, which deprives the individual partners of their property interests.

*Logoluso,* however, is clearly distinguishable from the case at bench. In *Logoluso,* the five brothers were partners in a farming business and owned ten parcels of land; various of the partners had built homes on particular parcels. They had agreed to divide the ten parcels, and all that remained to execute their agreement was an appraisal when one of the brothers attempted to rescind the agreement of division. Under those

circumstances, the appellate court found that it was error to order sale of the 10 parcels in the dissolution proceeding.

Here, however, we have one piece of property, and no agreement for division. Division would leave the plaintiffs and defendant as coowners, tenants in common. While defendant would then have a voice in management, he would also have an absolute right to partition, which would extend the litigation over the Wilshire property with another equity proceeding pending. (See Code Civ. Proc., §§ 872.710, subd. (b) and 872.730.) We note that the trial court would no longer be bound to make its decision while weighing the "great prejudice" which might be occasioned by outright sale, but could consider which course would be "more equitable" under the circumstances (Cal. Law Revision Com. com. to Deering's Ann. Code Civ. Proc., § 872.820, subd. (b) (1978 pocket supp.) p. 40). We conclude that, under the circumstances presented here, the trial court properly rejected a solution which would make the parties tenants in common with the right of partition, which would eventually result in a sale of the property.

## VII

### *The Motion for a New Trial*

Plaintiffs made a motion for a new trial on the ground that they had been denied a fair hearing by the trial judge. In support of their motion, they offered the declaration of their counsel, Allan H. Liebert. Attorney Liebert stated that, on April 15, 1976, after trial had concluded and the court was considering the report of the independent accounting firm appointed to review the partnership books, he received a telephone call from the clerk of the court advising him that the trial judge had been transferred from civil matters to the juvenile court; that it would be necessary to hold a hearing on the accounting report the following day, or the matter could be submitted without further hearing. Attorney Liebert stated that he had an opportunity to review the report and had consulted another accounting firm about its contents. He believed, according to his affidavit, that the report contained nothing that would be detrimental to his clients. Accordingly, he stipulated that the case could be taken under submission without further hearing, a stipulation with which opposing counsel agreed.

In making its decision in favor of defendant, the trial court indicated that it had placed substantial reliance on the independent accounting

report. Liebert contended in his declaration that he had been forced to stipulate by the clerk who had suggested mistrial as an alternative solution, one which Liebert wished to avoid.

At the hearing on this motion, the trial court judge stated that a hearing could have been held if the stipulation of counsel had not been obtained. The trial judge specifically denied that he had authorized his clerk to mention mistrial as an alternative solution. He denied the motion. It is now claimed on appeal that his denial was improper.

Code of Civil Procedure section 657, subdivision (1), provides that a ground for a new trial is "[i]rregularity in the proceedings of the court, jury or adverse party, or any order of the court or abuse of discretion by which either party was prevented from having a fair trial." As Witkin states, " '[t]he language of the statute is sufficiently broad to include any departure by the court from the due and orderly method of disposition of an action by which the substantial rights of a party have been materially affected.' " (5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 24, p. 3602.)

Witkin also points out that "[t]he trial judge is familiar with the evidence, witnesses and proceedings, and is therefore in the best position to determine whether, in view of all the circumstances, justice demands a retrial. Where error or some other ground is established, his discretion in granting or denying a new trial is seldom reversed. The presumptions on appeal are in favor of the order, and the appellate court does not independently redetermine the question whether an error was prejudicial, or some other ground was compelling. Review is limited to the inquiry whether there was any support for the trial judge's ruling, and the order granting or denying will be reversed only on a strong affirmative showing of abuse of discretion." (Witkin, *supra,* § 120, pp. 3697-3698.)

In the case at bench, we have first a factual disagreement as to what alternatives were communicated by the clerk to attorney Liebert. The trial court resolved that issue favorably to denial of the motion. Plaintiffs' appellate brief sets forth the circumstances under which Liebert admittedly waived further hearing under the mistaken belief that the independent report would not damage his clients. This is the type of decision lawyers ordinarily make in lawsuits, and a stipulation concerning court proceedings is within a lawyer's power to make on behalf of his client. (Code Civ. Proc., § 283, subd. 1.) The fact that Liebert's belief in the strength of his clients' case without the necessity of cross-examination of

the independent accountant and a presentation of rebuttal evidence turned out to be mistaken does not entitle plaintiffs to a new trial. We thus uphold the discretionary decision of the trial court.

The judgment is affirmed.

Kingsley, Acting P. J., and Hupp, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.