[Civ. No. 34674. First Dist., Div. One. July 19, 1974.]

EDWARD SILVA, Petitioner, v.
THE MUNICIPAL COURT FOR THE OAKLAND-PIEDMONT
JUDICIAL DISTRICT OF ALAMEDA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Hodge & Zweig, Joseph L. Matthews, Richard A. Hodge, Stokes, Clayton & McKenzie, Earl G. Stokes, Charles C. Marson, Joseph Remcho, Deborah Hinkel and Peter E. Sheehan for Petitioner.

Thomas F. Coleman and Albert L. Gordon as Amici Curiae on behalf of Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Sanford Svetcov, Deputy Attorneys General, for Respondent and for Real Party in Interest.

**OPINION**

**ELKINGTON, J.** — This proceeding in mandate concerns California's Penal Code section 647, subdivision (a), which provides that every person: "Who solicits anyone to engage in or who engages in lewd or dissolute

conduct in any public place or in any place open to the public or exposed to public view," is guilty of a misdemeanor.

Edward Silva, the petitioner, stands charged in the respondent Municipal Court for the Oakland-Piedmont Judicial District, with *soliciting* another to engage in such lewd and dissolute conduct. We issued an alternative writ of mandate directing the court to sustain Silva's demurrer to the complaint or in the alternative, to show cause why it had not done so. The court has chosen the alternative.

Three questions are presented for our consideration.

First: Are the words "lewd or dissolute conduct" unconstitutionally vague in their meaning?

Second: Does the statute contravene the First Amendment's guarantee of freedom of speech?

Third: If constitutional fault is absent, what meaning is to be given the words "lewd or dissolute conduct" in order that "citizens, law enforcement, judges or jurors can determine what is lawful?"

■ Preliminarily we note that it is now settled that the language of the statute: ". . . *solicits* anyone to engage in . . . lewd or dissolute conduct in any public place," refers to *"public solicitations* of lewd or dissolute conduct regardless of where the solicited acts are to be performed." (Italics added.) (*People* v. *Mesa* (1968) 265 Cal.App.2d 746, 751 [71 Cal.Rptr. 594]; and see *People* v. *Dudley* (1967) 250 Cal.App.2d Supp. 955, 957-958 [58 Cal.Rptr. 557].)

I. ■ We are guided in our resolution of the first issue by the decision of California's Supreme Court entitled *In re Giannini* (1968) 69 Cal.2d 563 [72 Cal.Rptr. 655, 446 P.2d 535] [overruled on other grounds in *Crownover* v. *Musick* (1973) 9 Cal.3d 405, 431 (107 Cal.Rptr. 681, 509 P.2d 497)]: There the court said (p. 571, fn. 4): "[W]e interpret, as did the trial court below, the terms 'lewd' and 'dissolute' [of Penal Code section 647, subdivision (a)] as identical to 'obscene' . . . ." So interpreted, the court held, "no vagueness objection [to the statute] is tenable."

*In re Giannini, supra,* concerned the topless performance of a nightclub dancer, but the court's interpretation of the statute's language reasonably, and obviously, must apply generally.

We find no authority in this state or elsewhere, and our attention has been drawn to none, which holds that the terms *"obscene"* and *"obscenity"*

as used in criminal statutes, are *unconstitutionally* vague or uncertain. Nor is any contention made here of such uncertainty, as to those words.

Under the clear authority of *In re Giannini, supra,* we must, and do, conclude that Penal Code section 647, subdivision (a), is not unconstitutionally vague in its meaning.

II. ▮ We advert to the second of the three issues before us.

▮ There has been frequent and unchallenged judicial reiteration that the First Amendment does not protect obscenity. (See *Kaplan* v. *California* (1973) 413 U.S. 115, 118-119 [37 L.Ed.2d 492, 496-497, 93 S.Ct. 2680, 2684]; *Roth* v. *United States* (1956) 354 U.S. 476, 485 [1 L.Ed.2d 1498, 1507, 77 S.Ct. 1304]; *In re Giannini, supra,* 69 Cal.2d at p. 567; *Aday* v. *Superior Court* (1961) 55 Cal.2d 789, 799 [13 Cal.Rptr. 415, 362 P.2d 47]; *In re Price* (1970) 4 Cal.App.3d 941, 947 [84 Cal.Rptr. 585].) We further observe that states have greater rights to proscribe obscenity "as the mode of expression moves from the printed page to the commission of public acts that may themselves violate valid penal statutes, . . ." (*California* v. *LaRue* (1972) 409 U.S. 109, 117 [34 L.Ed.2d 342, 351, 93 S.Ct. 390]; *People* v. *Drolet* (1973) 30 Cal.App.3d 207, 214 [105 Cal.Rptr. 824].) And it is said, expressing the obvious, that the prevention of obscene acts does not in any way "hinder the market place of ideas or freedom to distribute information and opinion." (*People* ex rel. *Hicks* v. *Sarong Gals* (1972) 27 Cal.App.3d 46, 51 [103 Cal.Rptr. 414].)

▮ But it is argued that the foregoing authority is inappropriate, for here the statute, insofar as it proscribes *solicitation* of an obscene act, prohibits "pure *speech*" and "the speaking of certain words."

As we have pointed out, the First Amendment does not prevent the state from declaring to be criminal, the commission of an obscene act. Such an obscene act may "manifest itself in *conduct,* in the pictorial representation of conduct, or in the *written or oral description of conduct. . . .*" (Italics added; *Kaplan* v. *California, supra,* 413 U.S. 115, 119 [37 L.Ed.2d 492, 497, 93 S.Ct. 2680, 2684].) Under this rule the *solicitation* (in and of itself) of an obscene act will reasonably be deemed obscene conduct or at least a written or oral description of obscene conduct, and therefore beyond First Amendment protection. Certainly any solicitation to engage in an obscene act, to be understood, must include a description of the proposed conduct.

Further we observe that the Legislature has often declared to be criminal, the *solicitation* by "pure speech," or otherwise, of criminal acts (e.g., Pen.

Code, §§ 93, 266h, 275, 311.5, 653f; Health & Saf. Code, § 11353; Mil. & Vet. Code, § 1673), and of acts, in themselves noncriminal, but reasonably deemed to be contrary to the public interest (e.g., Pen. Code, §§ 303a, 646; Elec. Code, § 12301). Such a legislative practice, insofar as we can determine, has never been attacked, at least successfully, on constitutional grounds.

A related contention, made without support of relevant authority, is that the statute here at issue is not only violative of the First Amendment, but also "of the Third, Fourth, Ninth and Fourteenth Amendments to the United States Constitution" in that it "intrudes upon the right to privacy without any compelling governmental purpose."

■ The contention is answered by the following utterance of the United States Supreme Court in *Chaplinsky* v. *New Hampshire* (1942) 315 U.S. 568, 571-572 [86 L.Ed. 1031, 1035, 62 S.Ct. 766]: "There are certain well-defined and narrowly limited classes of speech, *the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene,* . . . It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." (Italics added.) This pronouncement was currently restated (1973) by Burger, C. J., in *Miller* v. *California*, 413 U.S. 15, 20-21 [37 L.Ed.2d 419, 428, 93 S.Ct. 2607, 2613].

Yet another related argument is that somehow constitutional impropriety must be found in the statute, since it prevents *public* solicitation of *private* conduct between *consenting* adults. The argument misses the point that the solicitations are necessarily, or at least ordinarily, made to both willing and unwilling recipients. When the mode of dissemination of obscenity "carries with it a significant danger of offending the sensibilities of unwilling recipients" a state has a legitimate interest in preventing such dissemination. (See *Miller* v. *California, supra,* 413 U.S. 15, 18-19 [37 L.Ed.2d 419, 427, 93 S.Ct. 2607, 2612], and see the authorities there collected.) For this, and perhaps other reasons, the instant argument is also invalid.

III.　■ We consider now the third issue presented for our consideration.

As pointed out, the words "lewd or dissolute conduct" of Penal Code section 647, subdivision (a), must be given the meaning of "obscene" conduct. Our purpose then is to determine and state the nature of the obscene conduct proscribed by the statute.

Although not unconstitutionally vague, the word "obscenity," and its adjective form "obscene," have never been susceptible of easy definition. It is said in *Roth* v. *United States,* 354 U.S. 476, 491-492 [1 L.Ed.2d 1498, 1510-1511, 77 S.Ct. 1304]: "Many decisions have recognized that these terms of obscenity statutes are not precise. This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. '. . . [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. . . .' *United States* v. *Petrillo,* 332 U.S. 1, 7-8. These words, applied according to the proper standard for judging obscenity, already discussed, give adequate warning of the conduct proscribed and mark '. . . boundaries sufficiently distinct for judges and juries fairly to administer the law. . . . That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense. . . .' " (See also *Hamling* v. *United States* (1974) 418 U.S. 87, 111 [41 L.Ed.2d 590, 617, 94 S.Ct. 2887]; *Miller* v. *California, supra,* 413 U.S. 15, 27-28, fn. 10 [37 L.Ed.2d 419, 433].)

The lewd or dissolute or obscene conduct alluded to in Penal Code section 647, subdivision (a), concerns sexually related or motivated conduct, whether normal or perverted. (See *Miller* v. *California, supra,* 413 U.S. 15, 25 [37 L.Ed.2d 419, 431]; *Roth* v. *United States, supra,* 354 U.S. 476, 488-489 [1 L.Ed.2d 1498, 1509-1510].)

Almost without exception, latter day cases concerning the concept of obscenity have dealt with graphic, or pictorial, or performing "communication," as it touches upon First Amendment rights. Here, as has been pointed out, we are concerned with obscene conduct alone and solicitation of such conduct, "no essential part of [which constitutes] any exposition of ideas," and which therefore has no First Amendment significance. (See *Miller* v. *California, supra,* 413 U.S. at pp. 20-21 [37 L.Ed.2d at pp. 428-429].) For that reason, considerations such as "appeal to the prurient interest" and "redeeming social value" may be deemed foreign to any definition of obscene conduct unrelated to "communication." And *Miller* v. *California* (p. 26, fn. 8 [37 L.Ed.2d, p. 431]) tells us that: "States have greater power to regulate nonverbal, physical conduct than to suppress depictions or descriptions of the same behavior. . . ."

*Miller* v. *California, supra,* recognizing the paucity of precedential definition of obscene *conduct,* sets forth such a definition in this manner (413

U.S. at pp. 18-19, fn. 2 [37 L.Ed.2d at p. 427]): "This Court has defined 'obscene material' as 'material which deals with sex in a manner appealing to prurient interest,' *Roth* v. *United States,* 354 U.S. 476, 487 [77 S.Ct. 1304, 1310, 1 L.Ed.2d 1498, 427] (1957), but the *Roth* definition does not reflect the precise meaning of 'obscene' as traditionally used in the English language. Derived from the Latin *obscaenus, ob.* to, plus *caenum,* filth, 'obscene' is defined in the Webster's New International Dictionary (Unabridged, 3d ed., 1969) as '*1*a: disgusting to the senses . . . b: grossly repugnant to the generally accepted notions of what is appropriate . . . 2: offensive or revolting as countering or violating some ideal or principle.' The Oxford English Dictionary (1933 ed.) gives a similar definition, 'offensive to the senses, or to taste or refinement; disgusting, repulsive, filthy, foul, abominable, loathsome.' "

But, nevertheless, any true definition of obscene conduct, or interpretation of such definition, will vary from place to place and from time to time. In *Besig* v. *United States* (9th Cir. 1953) 208 F.2d 142, 145 [questioned on other grounds in *Lundgren* v. *Freeman* (9th Cir. 1962) 307 F.2d 104, 114], the Court of Appeals for the Ninth Circuit concluded that the term "obscene" is not "designed to fit the normal concept of morality of society's dregs, nor of the different concepts of morality throughout the world, nor for all time past and future, but is designed to fit the normal American concept in the age in which we live. . . ."

Perhaps the most widely quoted judicial attempt at definition of the concept with which we are concerned is that of Judge Learned Hand in *United States* v. *Kennerley* (S.D.N.Y. 1913) 209 F. 119, 121, where it is said: "If there be no abstract definition, such as I have suggested, should not the word 'obscene' be allowed to indicate the present critical point in the compromise between candor and shame at which the community may have arrived here and now? . . . [¶] Nor is it an objection, I think, that such an interpretation gives to the words of the statute a varying meaning from time to time. Such words as these do not embalm the precise morals of an age or place; while they presuppose that some things will always be shocking to the public taste, the vague subject-matter is left to the gradual development of general notions about what is decent. . . ."

To the same effect see *Parmelee* v. *United States* (1940) 113 F.2d 729, 732 [72 App.D.C. 203], *United States* v. *4200 Copies International Journal* (E.D.Wash. 1955) 134 F.Supp. 490, 493, *People* v. *Miller* (1935) 155 Misc. 446 [279 N.Y.S. 583, 584], *Commonwealth* v. *Baer* (1967) 209 Pa.Super. 349 [227 A.2d 915, 918-919] (affd. (1969) 436 Pa. 18 [257 A.2d 254].)

*Miller* v. *California, supra,* offers further aid to our attempt to define obscene conduct. The court tells us (413 U.S. at p. 25 [37 L.Ed.2d at p. 431]): "It is possible . . . to give a few plain examples of what a state statute could define for regulation under . . . the standard announced in this opinion, *supra:* (a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated. (b) Patently offensive representation or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."

The United States Supreme Court (*Miller* v. *California, supra,* 413 U.S. 15, 24 [37 L.Ed.2d 419, 431]; *Roth* v. *United States, supra,* 354 U.S. 476, 489 [1 L.Ed.2d 1498, 1509]) and this state's Supreme Court (*In re Giannini, supra,* 69 Cal.2d 563, 577-580), have declared that the existence of obscenity is to be determined according to *"contemporary community standards"* of decency. The nation's high court has found it permissible for the states to define those standards "in more precise geographic terms" (*Jenkins* v. *Georgia* (1974) 418 U.S. 153, 157 [41 L.Ed.2d 642, 648, 94 S.Ct. 2750]), and has determined California's statewide "relevant community" concept (see *In re Giannini, supra,* pp. 577-580) to be without "constitutional errors" (*Miller* v. *California, supra,* p. 31 [37 L.Ed.2d p. 435]). And, while pointing out that a "juror is entitled to draw on his own knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination" (*Hamling* v. *United States, supra,* 418 U.S. 87, 104 [41 L.Ed.2d 590, 613]), that court has held that expert testimony on the issue (see *In re Giannini, supra,* pp. 574-575), while not necessary (p. 106 [41 L.Ed.2d p. 614]), is permissible in the "wide discretion" of the trial court. (*Hamling* v. *United States, supra,* p. 108 [41 L.Ed.2d p. 615].)

From all of this we reach a definition of the obscene conduct covered by Penal Code section 647, subdivision (a). It is that sort of sexual conduct which is "grossly repugnant" and "patently offensive" to "generally accepted notions of what is appropriate" and decent according to statewide contemporary community standards. It will ordinarily include conduct found "disgusting, repulsive, filthy, foul, abominable [or] loathsome" under those standards.

Since, as we have indicated, states have greater power to regulate physical conduct than to suppress depictions or descriptions of the same behavior, they may obviously regulate public solicitation of physical obscene conduct.

Finding neither constitutional nor other fault in Penal Code section 647,

subdivision (a), or in the complaint charging Silva with a violation of that statute, we conclude that the respondent municipal court properly overruled Silva's demurrer.

It becomes unnecessary to consider additional related contentions made by the People, the real party in interest, in the return to the alternative writ.

The petition for a peremptory writ of mandate is denied, and the heretofore issued alternative writ is discharged.

Molinari, P. J., concurred.

**SIMS, J.**—I concur in the judgment.

Since the statute refers to public solicitation to engage in lewd or dissolute conduct there is some ambiguity as to the public or private nature of the conduct, the subject of the solicitation, which will render the solicitation unlawful. I would resolve this ambiguity and uphold the statute by limiting it, in cases of solicitation to private conduct, to a solicitation made in a public place, or in a place open to the public, or in a place or manner where the solicitation is audible to the public, to engage in a lewd or dissolute act which is prohibited by law, i.e., an infamous crime against nature (Pen. Code, § 286), lewd or lascivious acts against children (§ 288), sex perversion (§ 288a), and similar offenses, reserving, however, the question of whether any such proscribed conduct when conducted in private between consenting adults may properly be prohibited by the state. Included in the definition of prohibited public solicitation would be a solicitation to engage in lewd or dissolute conduct, in the sense of obscene conduct as defined in the majority opinion (see also §§ 314, 318.5 and 318.6) when the solicitation is to engage in such conduct in a public place, place open to the public, or place exposed to public view (§ 647, subd. (a)). As so limited the statute may be upheld, so the demurrer was properly overruled.

In my opinion the prohibited verbal acts as so limited are not entitled to the protection of the First Amendment because they are directly related to the commission of criminal conduct which is properly prohibited. Moreover, as so defined, they do not have a chilling effect on legitimate courting or other aspects of free speech.

Petitioner's application for a hearing by the Supreme Court was denied September 25, 1974. Tobriner, J., and Mosk, J., were of the opinion that the application should be granted.