[No. B014508. Second Dist., Div. Seven. Jan. 14, 1986.]

ANN HAYMAN et al., Plaintiffs and Appellants, v.
SHERMAN BLOCK, as Sheriff, etc., Defendant and Respondent.

## COUNSEL

Paul L. Hoffman, Mark D. Rosenbaum, Joan W. Howarth, Susan D. McGreivy, Robert C. Black and Elaine M. Burton for Plaintiffs and Appellants.

De Witt W. Clinton, County Counsel, and Frederick R. Bennett, Deputy County Counsel, for Defendant and Respondent.

## OPINION

MORROW, J.*—Plaintiffs appeal from a summary judgment in favor of defendant Sherman Block, Sheriff of Los Angeles County. The judgment is affirmed.

This is a taxpayers' suit brought pursuant to Code of Civil Procedure sections 526a (injunctive relief) and 1060 (declaratory relief), and 42 United States Code section 1983.

Plaintiff Reverend Ann Hayman is Director of the Mary Magdalene Project, a mission in Hollywood founded to rehabilitate prostitutes. Plaintiff Thomas Norman is a volunteer working with women at Catharsis, an association organized to aid women who were formerly engaged in prostitution. The defendants were the City Attorney of Los Angeles,[1] the Chief of Police of the City of Los Angeles,[2] and the Sheriff of Los Angeles County. Only Sherman Block, the Sheriff of Los Angeles County, is respondent in this appeal.

Appellants' complaint was filed in the Los Angeles Superior Court on May 10, 1983, and it alleged that respondent Block, as the Sheriff of Los Angeles County, is responsible for policing the unincorporated parts of the

---

*Assigned by the Chairperson of the Judicial Council.

[1]Initially Ira Reiner, by stipulation Gary Netzer.

[2]Darryl Gates.

county and for maintaining the Los Angeles County jails. Appellants alleged that respondent had violated his oath and duties through a practice and policy of discriminatory and unconstitutional enforcement of Penal Code sections 370 and 372,[3] and through the use of discriminatory arrest and bail procedures. "On information and belief," appellants alleged that: "thousands" of men and women are being harassed, mistreated and arrested as public nuisances; such persons, believed by law enforcement to be streetwalking prostitutes, are being illegally detained, searched and photographed; photographs of those persons are on file at the police station; their money is taken from them and bail denied to them; black women have been arrested far more than white women and men; men and women pedestrians have been "herded together and marched . . . into another jurisdiction" and forced "to stand at attention in the rain and cold with arms handcuffed and raised overhead for long periods of time." Appellants alleged that these practices were part of an effort to suppress streetwalking prostitution in the West Hollywood area of Los Angeles.

Appellants did not allege or contend that the public nuisance statute was unconstitutional.[4] Their allegation was that the sheriff has promulgated guidelines and engaged in practices in enforcing the sections against prostitutes which constitute violations of the prostitutes' constitutional rights.

Respondent filed a general denial of the allegations of the complaint about June 3, 1983.

On November 19, 1984, appellants filed a motion for summary judgment and/or summary adjudication of issues without substantial controversy under Code of Civil Procedure section 437c, against all the defendants. In support of this motion appellants filed declarations and depositions. In response, respondent filed objections to evidence, certain declarations, and a statement in opposition as well as respondent's own motion for summary judgment. The other defendants, the City Attorney and Chief of Police of

---

[3]Section 370 of the Penal Code defines a public nuisance as: "Anything which is injurious to health, or is indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property by an entire community or neighborhood, or by any considerable number of persons, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a public nuisance."

Penal Code section 372 provides: "Every person who maintains or commits any public nuisance, the punishment for which is not otherwise prescribed, or who willfully omits to perform any legal duty relating to the removal of a public nuisance, is guilty of a misdemeanor."

[4]The constitutionality of the public nuisance law has not been seriously challenged since *People* ex rel. *Busch* v. *Projection Room Theater* (1976) 17 Cal.3d 42 [130 Cal.Rptr. 328, 550 P.2d 600].

the City of Los Angeles, filed similar motions. All of the motions were heard together on March 12, 1985.

At the hearing of March 12, 1985, the objections of the respondent to certain of plaintiffs' declarations and to some of plaintiffs' evidence were sustained. The declarations of Goodbred, Stamler and Burton, filed by plaintiffs, were stricken because of defective jurats.

■ ■ ■ ■ A stipulation was entered into between plaintiffs and respondent.[5] The stipulation was part of plaintiffs'-appellants' written opposition to defendant's motions for summary judgment, and stated: "For the purpose of this Motion for Summary Judgment, plaintiffs accept Defendant Block's Summary of Uncontested Facts As To Sheriff, found on pp. 9-10 of Defendant Sheriff Sherman Block's Separate Statement Responding to Plaintiffs' Contended Statement of Undisputed Facts. For the purpose of this Motion for Summary Judgment, plaintiffs agree that:

"Under the guidelines established in conjunction with the District Attorney's Office, members of the West Hollywood Problems Unit detain and warn individuals who cause motorists to stop in traffic lanes or restricted areas thereby obstructing the free flow of vehicular traffic. Any person who repeats this offense after being warned, is liable for arrest pursuant to P.C. § 372 as a public nuisance. The motorist who stops is issued a citation and questioned as to why he stopped. Sheriffs deputies arrested 18 persons in the Hollywood area in 1984 for violation of P.C. § 372."

The statement accepted by plaintiffs-appellants read as follows: "1. Arrests by the Sheriff of the County of Los Angeles for the period 1982 through October 1984 in West Hollywood for violation of Penal Code §§ 370, 372, are as follows:

"1982—2 arrests, both of which resulted in convictions.

"1983—0 arrest.

"1984 (through October) 18 arrests, disposition not known.

"2. Arrests by the Sheriff's Department in West Hollywood for violation of Penal Code §§ 370, 372, are made pursuant to guidelines which, *inter alia,* limit arrests to situations where persons who have been warned at least

---

[5]In a trial, an attorney has control over the presentation of evidence and can enter into stipulations without the client's concurrence. (*Kim* v. *Orellana* (1983) 145 Cal.App.3d 1024 [193 Cal.Rptr. 827]; *Jacoby* v. *Feldman* (1978) 81 Cal.App.3d 432 [146 Cal.Rptr. 334].)

once that their actions are in violation of § 372, continue to do acts which obstruct the free flow of traffic by causing cars to stop in lanes of traffic or in restricted areas.

"3. Some persons engage in the business of prostitution on the streets and sidewalks in the West Hollywood area.

"4. The business of prostitution is unlawful in California.

"5. Some persons who engage in the business of prostitution in West Hollywood attempt to solicit potential customers by waving or hailing cars to stop or pull over for the purpose of negotiations.

"6. The actions described in No. 5 cause some cars to stop in traffic lanes or in restricted areas obstructing the free passage or use, in the customary manner, of public streets."

Respondent's most significant evidence was a declaration by Michael Quinn, a lieutenant in the sheriff's department. The declaration states:

"DECLARATION OF MICHAEL QUINN

"I, Michael Quinn, do declare under penalty of perjury:

"1. I am a Deputy Sheriff for the County of Los Angeles of the rank of Lieutenant, currently assigned to West Hollywood Sheriff's Station. I am currently serving as the Operations Lieutenant. As such, I am responsible, among other things, for developing station procedures, the efficient and effective deployment of our patrol force, for liaison with the District Attorney and the courts, and I am the supervisor of the Station's Special Problems Unit.

"2. The Special Problems Unit is designed to deal with specific problems in our patrol area. Current problems which this unit is concerned with include high concentrations of narcotics use and sales, prostitution, related crimes, and unusual traffic on the area's two man thoroughfares, Santa Monica Boulevard and Sunset Boulevard. Traffic congestion on these two thoroughfares is a particular problem due to the fact that no freeway crosses through our police jurisdiction, and these two streets are the primary roads used to connect the Westside with downtown Los Angeles. The traffic is at its worst generally from 10 a.m. to 2 a.m. daily due to the business and entertainment establishments in this area.

"3. The practices of prostitutes and others of hailing cars to the side of the street and delaying them and other traffic causes a particular problem in

our area. Parking is at a premium on the two main thoroughfares. These practices result in cars double parking, stopping in red zones and bus zones, blocking driveways, and even stopping in lanes of traffic. The result is an exacerbation of already difficult problems, and an interference with our ability to utilize these street for emergency purposes.

"4. Although this station virtually ceased to make arrests for violation of Penal Code section 372 to deal with these problems of obstructing the free passage or use of streets, the continuing problems caused us to reevaluate use of that section in 1984. To determine if we could use this section to deal with these problems, I and others met with Deputy District Attorney Marsha Revel, Head Deputy, Beverly Hills Municipal Court, the Court serving our area.

"5. As a result of those meetings, Deputy District Attorney Marsha Revel approved the following guidelines to be used in Penal Code Section 372 arrests which are believed to be not only legal but prosecutable.

"Marsha Revel indicated that Section 372 should not be used in any 'sweep' type enforcement, and that arrests should generally be used only in the following circumstances:

"1. That only members of West Hollywood Special Problems Unit utilize Section 372 P.C.

"2. That enforcement primarily be directed toward individuals who cause motorists to stop in traffic lanes or restricted areas thereby obstructing the free flow of vehicular traffic.

"3. That the motorist stopping be issued a citation for the appropriate Vehicle Code section, and questioned as to why he stopped, i.e. buy flowers, talk to pedestrian, etc.

"4. That the person or persons causing the motorist to stop be verbally admonished and some type of written record of the warning be kept for utilization and reference on subsequent occasions.

"5. If the person or persons warned repeat the offense after being warned at least once and perhaps twice, the person be arrested.

"6. Finally, that the number of arrests be held to a minimum with 'no quota' but perhaps a 'couple per day.'

"6. As a result of these guidelines, patrol deputies have been advised that only members of the Special Problems Unit are to make arrests for Section

372. Members of the Special Problems Unit have been trained to make arrest only under the conditions set forth above. This training included meetings with the District Attorney's Office.

"7. As Supervisor of the Special Problems Unit I monitor the [section] 372 arrests made at the station. My review of the records indicate that no [section] 372 arrests were made in 1984 prior to the month of July. These records also indicate that since July of 1984, 17 arrests for violation of Section 372 have been made. All of these arrests were done in compliance with the guidelines except one incident where the arrest was in compliance with the guidelines but was made by a patrol unit not part of the Special Problem Unit. These and all other deputies were counseled that such arrests are only to be made by members of the Special Problems Unit. I am confident that all arrests will continue to be made in compliance with these guidelines.

"Executed this 11th day of September, 1984 at Los Angeles, California.

/s/ Michael Quinn"

In his answer to plaintiffs' interrogatories, respondent emphatically denied that the sheriff's department uses a "public nuisance contact" form and denied that it ever transported suspects to a station and released them for public nuisance violations without booking. Respondent also denied making any arrests or issuing any citations for violations of any Los Angeles Municipal Code sections.

Mrs. Burton, plaintiffs' counsel, in a deposition taken by defendants on September 26, 1984, testified that the only cases in her declaration that dealt with sheriff's department arrests were those six listed on page 3 from line 22 to line 28, from the Beverly Hills Municipal Court.

■■■■ The evidence and issues in this case must be separated into issues that pertain to the "city defendants," Chief of Police Darryl Gates and Los Angeles City Attorney Gary Netzer, and the "county defendant," respondent Sheriff Sherman Block.[6] Our review of the materials submitted by appellants on the motion for summary judgment does not disclose any competent evidence in support of their claims against respondent, when considered with their stipulation and Lieutenant Quinn's declaration.

---

[6]The appellants' briefs do not delineate in their arguments between the city and the county defendants. Even though the city defendants are not involved in this appeal, there are numerous references in the appellants' briefs to facts and policies relating solely to the city defendants. We will ignore those matters as irrelevant to any issue here.

The declarations and depositions plaintiffs filed make virtually no mention of respondent. The declarations and depositions generally refer to the city defendants.

The trial court found the plaintiffs had produced no evidence to support any of the allegations of the complaint as to respondent, and granted respondent Block's motion for summary judgment, "on the grounds that there is no triable issue as to any material fact. . . ."

Plaintiffs appeal only from the granting of summary judgment in favor of respondent, Sheriff Block.[7]

The transcript of the hearing on the motion for summary judgment sets forth the basis for the court's decision. The court found that a temporary obstruction of traffic constitutes a public nuisance under Penal Code section 370 and that plaintiffs presented no evidence to support their claim of a discriminatory policy of enforcement of that section by the sheriff's department, or that there had been any denial of any person's constitutional rights in the enforcement of the public nuisance law. The court found that persons engaged in a continuous conduct of obstructing traffic do constitute a public nuisance and can be arrested for such offense whether or not they are engaged in prostitution activities. The court impliedly found that appellants had presented no evidence that the public nuisance statute had been used by the sheriff's department as a subterfuge to enforce prostitution laws or in any manner which would constitute discriminatory or selective law enforcement.

A motion for summary judgment is a statutory procedure whereby a party may move for a summary judgment in any action or proceeding if the party contends the action has no merit or that there is no defense thereto. (Code Civ. Proc., § 437c, subd. (a).) The motion must be decided upon admissible evidence in the form of affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice shall or may be taken. (Code Civ. Proc., § 437c, subd. (d).)

Personal knowledge and competency must be shown in the supporting and opposing affidavits and declarations. (Code Civ. Proc., § 437c, subd. (d); *Bowden* v. *Robinson* (1977) 67 Cal.App.3d 705, 720 [136 Cal.Rptr. 871].)

---

[7]A motion for summary judgment was granted in favor of Los Angeles City Attorney Netzer as to all causes of action, and Police Chief Gates as to the sixth and seventh causes of action. Plaintiffs' motions for summary judgment were all denied. No appeal has been taken from those orders or judgment. The appeal is brought under rule 5.1 of the California Rules of Court, and the entire record consists of an appellants' appendix in lieu of clerk's transcript.

The affidavits must cite evidentiary facts, not legal conclusions or "ultimate" facts. (6 Witkin, Cal. Procedure (3d ed. 1985) § 288, p. 587.)

Matters which would be excluded under the rules of evidence if proffered by a witness in a trial as hearsay, conclusions or impermissible opinions, must be disregarded in supporting affidavits. (*Kramer* v. *Barnes* (1963) 212 Cal.App.2d 440, 446 [27 Cal.Rptr. 895].) However, evidentiary objections not made either in writing or orally shall be deemed waived. (Code Civ. Proc., § 437c, subd. (b).)

The summary judgment procedure is drastic and should be used with caution so that it will not become a substitute for a full trial. A summary judgment is proper only if the affidavits of the moving party would be sufficient to support a judgment in his favor, and doubts as to the merits of the motion should be resolved in favor of the party opposing the motion. (*Becker* v. *IRM Corporation* (1985) 38 Cal.3d 454 [213 Cal.Rptr. 213, 698 P.2d 116].) A defendant moving for summary judgment has the burden of establishing that the action is without merit; a factual showing negating all causes of action upon all theories is required. (*Tresemer* v. *Barke* (1978) 86 Cal.App.3d 656, 666 [150 Cal.Rptr. 384, 12 A.L.R.4th 27].) If, however, all issues of fact are eliminated and the declarations filed in support of the motion establish that a defendant is entitled to judgment, summary judgment must be granted. (*Tauber-Arons Auctioneers Co.* v. *Superior Court* (1980) 101 Cal.App.3d 268 [161 Cal.Rptr. 789].)

The 1983 amendment to the summary judgment statutory procedure removed discretion from the court hearing the motion, and the motion must be granted if all the affidavits, declarations, admissions, and conceded facts, considered together, show that there is no triable issue of fact and, as a matter of law, the moving party is entitled to a judgment. (*Lucchesi* v. *Giannini & Uniack* (1984) 158 Cal.App.3d 777 [205 Cal.Rptr. 62].) In considering the propriety of the granting of a motion for summary judgment, when reviewed on appeal, we consider the respondent's papers strictly to determine whether the affidavits and evidentiary matters favoring the respondent do make such a showing. (*Ibid.*)

In determining whether the papers show that there is a triable issue as to any material fact, the court shall consider all of the evidence set forth in the moving papers, except that as to which objections have been made and sustained, and all inferences reasonable deducible from such evidence. However, summary judgment shall not be granted based on inferences from such evidence if contradicted by other inferences or evidence, raising a triable issue as to any material fact. (Code Civ. Proc., § 437c, subd. (c).) Summary judgment shall not be denied on grounds of credibility or for want

of cross-examination of witnesses furnishing affidavits where the only proof of a material fact in support of the summary judgment is an affidavit or declaration made by an individual who was the sole witness to such fact. (Code Civ. Proc., § 437c, subd. (e).)

█ An appeal may be taken from a summary judgment. (Code Civ. Proc., § 437c, subd. (*l*).) On appeal, the review is limited to the facts shown in the documents presented to the trial judge although the Court of Appeal makes an independent determination of their construction and effect as a matter of law. (*Bonus-Built, Inc.* v. *United Grocers, Ltd.* (1982) 136 Cal.App.3d 429 [186 Cal.Rptr. 357].) █ The trial court is required to rule on objections made orally or in writing, but if the trial judge does not rule specifically upon the objections but only considers legally admissible evidence in making its ruling, the appellant has the burden of pointing out any evidentiary errors that prejudiced his position. Failure to do so constitutes a waiver on appeal of any possible error in this respect. (*Hoover Community Hotel Development Corp.* v. *Thomson* (1985) 167 Cal.App.3d 1130 [213 Cal.Rptr. 750]; *Henderson* v. *Security Nat. Bank* (1977) 72 Cal.App.3d 764 [140 Cal.Rptr. 388].)

█ It is true the appellants herein filed declarations and depositions which made general and vague charges against the respondent. These declarations did not, however, tender any competent or credible evidence or raise a triable issue of fact as to respondent Block.

For example, plaintiffs filed a declaration of Ms. Constancia Elizabeth James, a self-described prostitute cited as one of the individuals who claimed to be a victim of the law enforcement harassment.

The declaration, as regards respondent, states: "7. I was detained by Sheriff's deputies and taken to the Sheriff's station on Santa Monica Boulevard without being arrested on two occasions in November of 1982. The first time, I was stopped as a I walked out of Schwabs drugstore on Laurel Canyon and Sunset. I was taken with three other black women to the station. We were held for a period of time and released without being booked and told to find our own way home.

"8. The second detention occurred on the night before Thanksgiving. I was walking out of a store with three friends, one woman and two men. Sheriffs deputies took the woman and me to the substation where we were held for approximately eight hours without being cited or arrested. A Sheriff's deputy showed me pictures of two females who were decapitated. One was Caucasian, and the other was Black. The Black woman was laid out on a gurney. She was not only decapitated, but her entrails were coming out

of her body. The Sheriff's deputy took our pictures saying they needed them so we could be identified if we were found dead."

Ms. James was deposed regarding her declaration. After the nature of the deposition proceeding was carefully explained to Ms. James, she was told, "[e]ven though we're in an informal situation here . . . that oath is still the same as if we were sitting in a courtroom. [¶] It's important that you be as careful as you can to give us accurate information." Ms. James testified she had had contact with Los Angeles County sheriff's deputies some 500 times over a 2-year period. Only one of those contacts resulted in an arrest. But some 450 contacts resulted in citations. Ms. James never appeared on the citations, and "probably have warrants for them now, some of them." The various warrants were in various names.

Ms. James testified that on January 28, 1983, she was arrested "at which time $40,000 worth of warrants fell on my head. And at that time for those warrants that didn't fall, I wrote a letter—that is still in my possession—I wrote a letter to the sheriff's department asking that they find some of the names that didn't fall." She testified she had pled guilty to all of the warrants and received a six-month jail sentence. The citations were for a public nuisance, hiking on a roadway, and interfering with vehicular traffic. When asked for examples of police harassment, Ms. James cited an instance where "by referring to us not as hookers, not as prostitutes, but as bitches, that kind of thing . . . like 'Why don't you bitches go home and be wives.' " She considered the tickets and the citations to be harassment because the officers knew that she did not intend to appear in court, and could get out for $50. Ms. James described numerous instances in detail and testified under oath that she would get citations for "always . . . hitchhiking in the roadway or public nuisance." She testified that she thought the citations were meaningless. Under examination by the counsel for the city attorney and police chief, Ms. James testified that she had been arrested numerous times for public nuisance, and at least 60 times for violations of section 372 of the Penal Code. She would be arrested, would bail out, but never show up for court.

After this extensive and detailed sworn testimony, (the deposition is 85 pages long), plaintiffs' counsel contacted Ms. James' attorney to determine the nature of her prior arrests. Appellants' counsel herein contacted respondent's counsel and told him that none of Ms. James' arrests, citations or warrants were for violations of Penal Code section 372, but rather were for prostitution and other offenses. Respondent's counsel requested the sheriff's department check their records with regard to all of the names Ms. James said she had used, and the sheriff's department advised respondent's counsel that there was no record of any Penal Code section 372 arrest or citation

under any of the names provided. A declaration setting forth these facts was filed by respondent's counsel.

In the Elaine M. Burton declaration, Ms. Burton (counsel for plaintiffs-appellants) requested the trial court take judicial notice of numerous Los Angeles and Beverly Hills Municipal Court misdemeanor files. Her declaration was stricken because of an incomplete jurat. On February 7, 1985, plaintiffs filed a request for transfer of municipal court files for judicial notice pursuant to Evidence Code section 452, subdivision (d). The document contained a court order that apparently was never signed. The files are not part of the record on appeal, and there is no indication in the briefs or the record as to their significance or as to whether they relate to respondent on this appeal.[8]

The declaration of plaintiff Hayman contains numerous conclusions regarding "police" harassment. It is undisputed that the term "police" in this case refers to the Los Angeles Police Department and not to respondent sheriff. The same is true of the declarations of Constancia James, Theresa Mary Hayes, Charlotte Kaiser and Elliot Stamler.

Under the current law, in considering a motion for summary judgment, the trial judge may not only engage in reasonable inferences from the documentary evidence and declarations but must also consider the competency of the evidence presented.

In *Patane* v. *Kiddoo* (1985) 167 Cal.App.3d 1207 [214 Cal.Rptr. 9], plaintiff sued for a refund of taxes which he claimed were illegally assessed and collected by the Employment Development Department. Defendant moved for summary judgment on the ground that plaintiff's failure to exhaust administrative remedies deprived the trial court of jurisdiction. The original verified complaint and attachments incorporated therein failed to allege that plaintiff had filed such an appeal. In the amended complaint, Patane alleged the filing of an appeal "before" the board.[9] In his declaration opposing the motion for summary judgment, plaintiff's attorney stated, "[o]n October 19, 1981, I filed an appeal from the denial of the claim for refund with the San Jose office of the California Unemployment Insurance Appeals Board. I did *not,* as stated in declaration of [the board's chief

---

[8]The court did take judicial notice of a number of files submitted. While there is no detail in the record indicating what files the court considered, it is clear from the court's comments those files related only to the city defendants, not to the county defendant.

[9]Of note was the fact the allegation in the amended complaint called the board the "California Unemployment Appeals Board" instead of its true name the "California Unemployment Insurance Appeals Board," an omission which probably gave credence to the trial judge's disbelief of the affidavit of the plaintiff's attorney.

counsel] appeal to an administrative law judge. As stated, I filed the appeal with the San Jose Office of the California Unemployment Insurance Appeals Board. The Board eventually assigned administrative law judge Bruce N. Berwald to decide the appeal." (Italics in original.) The defendants filed a declaration stating that the records of the Unemployment Insurance Appeals Board did not disclose that the plaintiff filed an appeal with the board. In affirming the summary judgment in favor of the defendants, the Court of Appeal in effect affirmed the finding of the trial court that the declaration of plaintiff's counsel was false, and found that the admissions in the original complaint showed that the original verified allegations were true and the allegations in the amended complaint were not. The Court of Appeal concluded, as did the trial court, that the papers established beyond dispute that plaintiff failed to file the necessary appeal before the board.

In *Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112 [211 Cal.Rptr. 356, 695 P.2d 653], the Supreme Court affirmed a summary judgment in favor of a hospital insurer. An anesthesiologist sued Huntington Memorial Hospital for damages for an injury he sustained when he was shot by an unknown assailant in one of the hospital's parking lots at night. The insurer moved for summary judgment and filed a declaration of its vice-president declaring that the company had no ownership or possessory interest in the hospital's premises and exercised no authority or control over the hospital's security practices. He declared that the insurer took no part in deciding what security measures were to be implemented at the hospital and concluded that the only relationship between the insurer and the hospital was that of insurer and insured. Plaintiff countered that declaration with the deposition testimony of the hospital's vice-president of administration that the hospital made the decision to disarm its guards based on information given by several persons, including representatives of the insurance company. The administrator also testified the insurer " 'had no specific recommendation that they—that security officers should or should not carry arms [and] that the hospital's liability coverage would be in effect whichever way the decision was made.' " (*Id.*, at p. 135.) In affirming the summary judgment, the Supreme Court said that, considered in its entirety, the evidence unequivocally established that the insurer had no ownership, possession or control of the hospital's premises. (See also *Durbin* v. *Fletcher* (1985) 165 Cal.App.3d 334, 346, fn. 3 [211 Cal.Rptr. 483].)

Thus, while the court in determining a motion for summary judgment does not "try" the case, the court is bound to consider the competency of the evidence presented. In this case, appellants presented no competent evidence to contradict the evidence presented by respondent and the facts appellants stipulated were true. The trial court was not impressed by appel-

lants' declarations or depositions and held that they did not raise any issues of fact as to whether respondent was abusing Penal Code sections 370 and 372 to harass prostitutes in West Hollywood.

The trial court, well within its power and responsibility to consider the competency of the evidence submitted, found that appellants' claims had no basis in fact. We agree with that finding.

It is difficult to determine what appellants' complaint is against respondent's "guidelines" as set forth in Lieutenant Quinn's declaration. Appellants' brief argues that ambulatory pedestrians on sidewalks do not obstruct vehicular traffic, that the perambulations of pedestrians who do not continually or continuously occupy a fixed location cannot be a public nuisance, and that the scope of Penal Code sections 370 and 372 cannot be enlarged by executive policy or judicial construction. Appellants argue the definition of the word "obstruction" and argue that an individual cannot constitute a public nuisance in violation of section 372 of the Penal Code.

Whether or not an individual has violated a criminal law is an issue to be determined in a trial of the individual accused and according to the facts of each individual's case. Appellants concede that numerous cases have held that human beings blocking the right of way can constitute an obstruction and thus a public nuisance. Thus, whether such conduct in an individual case has violated the section depends upon the facts of each case. (*In re Cox* (1970) 3 Cal.3d 205 [90 Cal.Rptr. 24, 474 P.2d 992].)

■ While it is unarguable that an injunction may lie to prevent unlawful or unconstitutional enforcement of a valid Penal Code statute (*Pitchess* v. *Superior Court* (1969) 2 Cal.App.3d 644 [83 Cal.Rptr. 35]; *Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238 [158 Cal.Rptr. 330, 599, P.2d 636]), appellants totally fail to point out any constitutional infirmity with the guidelines. ■ The guidelines do not purport to make a pedestrian a nuisance as appellants argue. The guidelines indicate that enforcement may be directed toward individuals who *cause* motorists to stop in traffic lanes or restricted areas thereby obstructing the free flow of vehicular traffic. Thus, the nuisance is the stopped vehicular traffic. (Pen. Code, § 370.) The offense is the violation of section 372. "Every person who maintains or commits any public nuisance . . . ." (Pen. Code, § 372.) The numerous cases cited in appellants' brief have no application to this point. Appellants do not present, either before the trial court on their motion for summary judgment or on this appeal in their opening or reply briefs, any argument which points out any constitutional defect in the guidelines.

We can find nothing to suggest that the sheriff's guidelines are violative of constitutional rights.

The arrest of persons, whether or not they are prostitutes, who cause obstructions of traffic does not violate freedom of speech,[10] privacy rights, Fourth Amendment rights, or rights to travel, any more than does arresting persons who jaywalk or establish barriers across the street.

"Governmental regulation of street traffic is clearly a legitimate exercise of the police power (See *Cox* v. *New Hampshire* (1941) 312 U.S. 569 [85 L.Ed. 1049, 61 S.Ct. 762, 133 A.L.R. 1396]; 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 197, pp. 3472-3474.) . . . .

". . . . The roadway is that portion of the street travelled by vehicles. . . . Prohibiting dissemination of *anything* in the path of cars, trucks and buses obviously furthers public safety, constituting a reasonable place restriction." (*Welton* v. *City of Los Angeles* (1976) 18 Cal.3d 497, 504-505 [134 Cal.Rptr. 668, 556 P.2d 1119]; italics added.)

The sheriff's guidelines direct enforcement against conduct, not speech. As utilized by the sheriff, there is no evidence the guidelines are used merely to preclude solicitation between persons on the sidewalk. The evidence shows respondent has directed enforcement only against conduct, whether by prostitutes, flower vendors or others, which obstructs traffic.

Finally, the issue of state preemption of sexual crimes does not arise because plaintiff has submitted no evidence that respondent is using the public nuisance statute to attempt to control prostitution activities. (*Yuen* v. *Municipal Court* (1975) 52 Cal.App.3d 351 [125 Cal.Rptr. 87].)

Appellants produced no credible evidence sufficient to raise a triable issue of fact. The summary judgment for respondent Sheriff Block was properly granted.

The judgment is affirmed.

Lillie, P. J., concurred.

**THOMPSON, J.**—I dissent.

This case involves an appeal by the plaintiffs from a summary judgment in favor of defendant Sheriff Block. Plaintiffs assert that there are triable

---

[10]"A statute which by judicial construction prohibits only the solicitation of criminal acts does not abridge freedom of speech. (See *Silva* v. *Municipal Court* [1974] *supra,* 40 Cal.App.3d 733, 737-738 [115 Cal.Rptr. 479]; cf. *Dennis* v. *United States* (1951) 341 U.S. 494, 504-508 [95 L.Ed. 1137, 1149-1152, 71 S.Ct. 857]; *Goldin* v. *Public Utilities Comm.* (1979) 23 Cal.3d 638 at pp. 654-657 [153 Cal.Rptr. 802, 592 P.2d 289].) [Fn. omitted.]" (*Pryor* v. *Municipal Court, supra,* 25 Cal.3d at p. 254.)

issues of fact, thus precluding summary judgment in favor of defendant Sheriff Block. Issue finding rather than issue determination is the pivot on which summary judgment law turns. (*Frazier, Dame, Doherty, Parrish & Hanawalt* v. *Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, 338 [138 Cal.Rptr. 670].) Where defendant seeks summary judgment, his declarations and evidence must either conclusively disprove at least one essential element of every cause of action in plaintiff's complaint against him, or prove an affirmative defense that would bar every cause of action in the complaint against him. (*Ibid.*) Moreover, "[t]here is nothing in the statute [Code Civ. Proc., § 473c] which lessens the burden of the moving party simply because at the trial the resisting party would have the burden of proof on the issue on which the summary judgment is sought to be predicated. In such a case, on the motion for summary judgment, the moving party must generally negative the matters which the resisting party would have to prove at the trial." (*Barnes* v. *Blue Haven Pools* (1969) 1 Cal.App.3d 123, 127 [81 Cal.Rptr. 444].)

By their decision today, the majority place the burden of proving that there is a triable issue of a material fact on the plaintiffs, contrary to settled law. The gist of the majority opinion is that the plaintiffs failed to present any evidence in support of their claims against defendant Sheriff Block, whether showing that the sheriff's department used the public nuisance statute as a subterfuge to enforce prostitution laws or in some other alleged unconstitutional manner. The premise for this position appears to be, in addition to the declaration of Michael Quinn, the concession made by plaintiffs' counsel in stipulating that the sheriff's department "detain and warn individuals who cause motorists to stop in traffic lanes or restricted areas thereby *obstructing the free flow of vehicular traffic.*" This substantial concession, made without a showing of specific authorization by plaintiffs, does not bind plaintiffs or this court. (*Chitwood* v. *County of Los Angeles* (1971) 14 Cal.App.3d 522, 526 [92 Cal.Rptr. 441]; *Price* v. *McComish* (1937) 22 Cal.App.2d 92, 96-99 [70 P.2d 978].) "While an attorney has broad authority to enter into stipulations relative to the conduct of a case, this right does not extend to waiving a client's cause of action, or defense, without authority on the part of the client." (*Roscoe Moss Co.* v. *Roggero* (1966) 246 Cal.App.2d 781, 786 [54 Cal.Rptr. 911].) In fact, just recently, in *Blanton* v. *Womancare, Inc.* (1985) 38 Cal.3d 396, 404 [212 Cal.Rptr. 151, 696 P.2d 645], our Supreme Court, in commenting on the authority of an attorney to bind his client, stated: "An attorney is not authorized, however, merely by virtue of his retention in litigation, to 'impair the client's substantial rights or the cause of action itself.'" Moreover, in determining whether a "triable issue" of fact exists, we must strictly construe the Quinn declaration in favor of plaintiffs. (*Sprecher* v. *Adamson Companies* (1981) 30 Cal.3d 358, 373 [178 Cal.Rptr. 783, 636 P.2d 1121];

*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 21 [112 Cal.Rptr. 786, 520 P.2d 10].) In my judgment, the Quinn declaration fails to conclusively negate a necessary element of plaintiffs' case and demonstrate that under no hypothesis is there a material factual issue which requires the process of a trial. (See *Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851 [94 Cal.Rptr. 785, 484 P.2d 953].) There is still a triable issue of fact as to whether the California public nuisance statutes are being enforced by defendant Sheriff Block in an unconstitutional manner under the questioned guidelines.

Accordingly, I would reverse the trial court summary judgment in favor of defendant Sheriff Block.

A petition for a rehearing was denied February 13, 1986. Thompson, J., was of the opinion that the petition should be granted. Appellants' petition for review by the Supreme Court was denied May 8, 1986.